UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

VALERIE F. WILLIAMS
1100 Holbrook Terrace, N.E.; Apt 4
Washington, D.C.  20002

    Plaintiff,

    v.                         Civil Action No.

OFFICE OF THE ARCHITECT OF THE CAPITOL
United States Capitol Building
Washington, D.C.  20540

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Valerie F. Williams, and for her Complaint against the Defendant, shows this Court the following:

### NATURE OF THE ACTION AND JURISDICTION

1. This is an action based on ongoing and continuing unlawful discriminatory employment activities taken by Defendant against the Plaintiff in violation of 2 U.S.C. 1311(a)(1) based on Plaintiff's African American race

Further, this is an action based on ongoing and continuing unlawful discriminatory employment activities taken by Defendant against the Plaintiff in violation of 2 U.S.C. 1311(a)(1) based on Plaintiff's on Plaintiff's female sex and gender

Further, this is an action based on going and continuing unlawful retaliatory employment activities taken by Defendant against the Plaintiff in violation of 2 U.S.C. 1317(a) based on Plaintiff's on going and continuing opposition to discrimination based on Plaintiff's African American race in violation of 2 U.S.C. 1311(a)(1) of the CAA.

Further, this is an action based on going and continuing unlawful retaliatory employment activities taken by Defendant against the Plaintiff in violation of 2 U.S.C. 1317(a) based on Plaintiff's on going and continuing opposition to discrimination based on Plaintiff's female sex and gender in violation of 2 U.S.C. 1311(a)(1) of the CAA.

Further, this is an action based on going and continuing unlawful retaliatory employment practices taken by Defendant against the Plaintiff in violation of 2 U.S.C. 1317(a) based on Plaintiff's participation in federally protected activities pursuant to the Congressional Accountability Act pursuant to 2 U.S.C. 1402 and 2 U.S.C. 1403 of the CAA respecting underlying Request for Counseling in Case No. 12-AC-22(CV, RP).

Further, this is an action based on going and continuing unlawful discriminatory and retaliatory employment activities in respective violation of 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the CAA based on the creation of respective hostile work environments.

2. Plaintiff, since August 21, 1994, has been an employee of the Defendant Architect of the Capitol and pursuant to Section 101(3)(F) of the CAA is a covered employee.

3. On February 9, 2012, Plaintiff timely filed a "Request for Counseling" in Case No. 12-AC-22(CV, RP) with the Office of Compliance pursuant to 2 U.S.C. 1402 of the CAA based on unlawful discriminatory and unlawful retaliatory employment practices in respective violation of 2 U.S.C. 1311(a)(1), and 2 U.S.C. 1317(a) of the CAA.

4. On March 19, 2012, Plaintiff timely requested mediation.

5. By March 21, 2012, letter of the Executive Director of the Office of Compliance, mediation was invoked for the period of March 19, 2012 through April 18, 2012.

6. By April 17, 2012, letter of the Executive Director of the Office of Compliance, mediation was extended to May 11, 2012.

7. By May 8, 2012, letter of the Executive Director of the Office of Compliance, mediation was extended to June 1, 2012.

8. By June 1, 2012, letter of the Executive Director of the Office of Compliance, mediation was extended to June 14, 2012.

9. By June 13, 2012, letter of the Executive Director of the Office of Compliance, mediation was extended to July 16, 2012.

10. By July 17, 2012, letter of the Executive Director of the Office of Compliance, mediation

was extended to July 24, 2012.

11. Plaintiff, pursuant to 2 U.S.C. 1404 of the CAA, timely files this Complaint with the Court within 90 days of receipt on August 4, 2012 of the July 26, 2012, "End of Mediation Notice" of the Office of Compliance.

## FACTUAL BACKGROUND

12. On August 21, 1994, Plaintiff entered employment with the Defendant on as a GS-5, Step 1, Service Assistant in the Senate Office Buildings.

13. In 1995, Plaintiff was promoted to a GS-6, Step 1, Service Assistant position.

14. In 1997, Plaintiff was promoted to a GS-7, Step 1, Service Assistant position.

15. In 2004, pursuant to a Vacancy Announcement, Plaintiff successfully competed for the WG-10 Step 1, Electronic Mechanic position in the Electronic Engineering Division

16. In August, 2005, Plaintiff was promoted to the WG-10 Step 1 Electronic Mechanic position in the Electrical Engineering Division.

17. In 2006, Plaintiff was promoted to the WG-11, Step 2 Electronic Mechanic position in the Electronics Division.

18. In 2007, Plaintiff was promoted to the WG-12, Step 2 Electronic Mechanic position in the Electronics Division.

19. At all relevant times herein, August 31, 2011, Plaintiff's first line supervisor has been John Bean, Supervisor of the Electronic Mechanics of the House side of the Electronic Engineering Division, "EED."

20. At all relevant times herein, August 31, 2011 and thereafter, Plaintiff's third line supervisor has been Robert Gatewood, General Supervisor of the Electronic Engineering Division is made up of the House side and Senate side.

21. At all relevant times herein, August 31, 2011 and thereafter, Plaintiff's fourth line supervisor has been William Miller, Head of the Electronic Engineering Branch, "EEB,"which includes the EED, the EMCS and High Voltage Division.

22. At all relevant times herein, August 31, 2011 and thereafter, Plaintiff's fourth line supervisor has been Bruce Arthur, Assistant Director of Design Services.

23. At all relevant times herein, August 31, 2011 and thereafter, Plaintiff's fifth line supervisor has been Anna Franz, Director of Planning and Project Management.

24. At all relevant times herein, August 31, 2011 and thereafter, Plaintiff's sixth line supervisor has been Christine Merdon, Chief Operating Officer of Defendant.

25. At all relevant times herein, August 31, 2011 and thereafter, Plaintiff's seventh line supervisor has been Stephen Ayers, Architect of the Capitol..

26. Plaintiff, pursuant to her promotion in 2004 as an Electronic Mechanic in the Electronic Engineering Division was assigned to the " House side" of the Electrical Engineering Division.

27. On August 23, 2011, Plaintiff, a WG- 12 Step 4 Electronic Mechanic assigned to the House side of the EED and while working in the Cannon Building, Basement Room 19, the location of the Electronic Mechanic Shop of the House side of the Electronic Engineering Division, sustained a work related injury to her neck and lower back requiring Plaintiff to be sent to the Emergency Room of Georgetown Hospital and, upon medical examination, required Plaintiff to be out of the workplace approximately three work days.

28. Plaintiff had been working at least two hours before she sustained the workplace injury.

29. Plaintiff had been working with Ronald Carter, a co-worker in the Electronics Division, when she sustained the workplace injury.

30. Plaintiff, pursuant to the injury she sustained in the workplace, was taken from the workplace by ambulance to the Emergency Room at Georgetown Hospital.

31. Plaintiff was accompanied to the hospital by Supervisor John Bean.

32. General Supervisor Gatewood was in the same room as the Plaintiff, when the paramedic came to the workplace to take the Plaintiff by ambulance to the hospital.

33. On August 24, 2011, General Supervisor Gatewood phoned the Plaintiff who was at her home pursuant to the work related injury sustained by the Plaintiff on August 23, 2011.

4

34. General Supervisor Gatewood phoned the Plaintiff to inquire why the Plaintiff was not at work.

35. Plaintiff advised General Supervisor Gatewood that Supervisor Bean who had accompanied the Plaintiff to the hospital the previous day had Plaintiff's paperwork respecting the injury sustained by the Plaintiff on August 23, 2011.

36. Plaintiff further advised Robert Gatewood that she was unable to come into the workplace based on her injury.

37. Plaintiff further advised Robert Gatewood that she had texted Supervisor Bean earlier that morning and had informed him how she was feeling on August 24, 2011 and that she would not be coming into work that day.

38. Plaintiff further advised Robert Gatewood that Workers' Compensation paperwork needed to filled out in her absence.

39. General Supervisor Gatewood in response to Plaintiff's request that Workers' Compensation paperwork be filled out in her absence and submitted began to yell and argued with the Plaintiff about the injury sustained by the Plaintiff on August 23, 2011.

40. General Supervisor Gatewood told the Plaintiff that she would have to prove she had gotten hurt at work

41. General Supervisor Gatewood, while yelling at the Plaintiff, stated to the Plaintiff that when Plaintiff had left with the paramedics, the Plaintiff had said nothing about filing a Workers' Compensation claim and did not ask for the paperwork needed to file a Workers' Compensation claim.

42. In frustration, the Plaintiff discontinued the phone call and phoned the Human Resources Management Division of Defendant for assistance in filling out and submitting the necessary Workers' Compensation paperwork.

43. On August 24, 2011, Plaintiff spoke by phone with Arlen Holmes of Human Resources and informed him of her injury and the need to fill out Workers' Compensation papers in her

absence.

44. On or about August 25/26, 2011, the Plaintiff went to her doctor and obtained support for her absence and medical direction to be placed on indefinite light duty upon the return to work by the Plaintiff.

45. Plaintiff, on her return to work on August 29, 2011, pursuant to doctor's order, was assigned to a light duty position.

46. Plaintiff upon her return to work on August 29, 2011, was temporarily assigned a light duty position in the Senate side of the EED.

47. Plaintiff reported to the Senate Side of the EED located in room SRB 37 in the basement of the Russell Senate Office Building on Monday, Tuesday and Wednesday, respectively August 29, 2011 through August 31, 2011, without issue respecting the passageway in SRB 27..

48. On reporting to work on Monday, Tuesday and Wednesday, Plaintiff entered room SRB-30 and proceeded through room SRB-30 and entered room SRB 27 where the lockers were located for the use of the Electronic Mechanics assigned to the Senate side of the EED for the purpose of placing her pocketbook in a locker.

49. Plaintiff then returned to room SR-37 through the passage way connecting room SRB-27 and room SRB-30.

50. On Thursday, Plaintiff, as was usual on her entering the workplace entered room SRB-30 and proceeded through room SRB-30 and entered room SRB 27 where the lockers were located for the for the purpose of placing her pocketbook in a locker.

51. Plaintiff after placing her pocketbook in her locker turned around and saw four co-workers blocking the pathway to get to the passageway connecting rooms SRB-27 and SRB 30: Paul Baltranus, Paul Satterfield, Ronald Honesty and John Britton.

52. As she walked towards the passageway, now occupied by said four co-workers who had not been in the passageway two minutes earlier when Plaintiff had come into room SRB 27 to use her locker, Paul Baltranus stepped in front of and very close to and in front of the face of the Plaintiff

6

and in a menacing, intimidating, aggressive and threatening manner and demeanor yelled at the Plaintiff about her "improper" use of the passageway and to use the public corridor to access room SRB 27.

53.  The close proximity of Paul Baltranus to the Plaintiff resulting from the stepping into the face of the Plaintiff by Paul Baltranus and the latter's menacing, intimidating, aggressive and threatening manner and demeanor placed the Plaintiff in fear of assault.

54.  Plaintiff had been physically assaulted by Paul Baltranus a few years earlier when she had been taken on a tour of the Electronic Mechanic shop in the Library of Congress with Paul Baltranus who had then been an Electronic Mechanic assigned to the Library of Congress and Plaintiff had been an Electronic Mechanic assigned to the House side of the Electronic Engineering Division.

55. Plaintiff advised Paul Baltranus that she had used the passageway the three previous days to get to and from her locker and that it was proper for her to use the passageway as she was an Electronic Mechanic temporarily assigned to the Senate side of the Electronic Engineering Division.

56. The two, Plaintiff and Paul Baltranus exchanged words about the use by the Plaintiff of the passageway between room SRB 27 and room SRB 30.

57. As the Plaintiff slowly moved forward and away from Paul Baltranus to continue to get to the said passageway between room SRB 27 and room SRB 30, the other three co-workers who, with Paul Baltranus had been intentionally blocking her path, moved out her way and allowed the Plaintiff leave room SRB 27 and return to room SRB 30 the same way she had entered room SRB 27 earlier that morning.

58. On August 31, 2011, Plaintiff attached warning notices to the wall located outside the back entrance to SRB 27 and on the door of SRB 27.

59.  Plaintiff attached said notices to warn other employees and persons using the corridors of the harassment and intimidation they might be presented with simply by walking in the corridors and passageways.

60.   On September 1, 2011 Plaintiff informed General Supervisor Gatewood about the incident and confrontation in the passageway instigated by Paul Baltranus on August 31, 2011, and reminded him that she was afraid of Paul Baltranus based on the prior history of the assault she sustained when the Plaintiff had earlier gone on a tour of the Library of Congress with Paul Baltranus.

61.   During the same conversation on September 1, 2011, Plaintiff admitted to General Supervisor Gatewood that she had placed the anonymous notices on the wall and door of SRB 27.

62.   Plaintiff advised General Supervisor Gatewood that she had written and placed the notices on the wall and the door to alert management of the existing problems in the Electronics Engineering Division so as to address, discuss and resolve the problems of discrimination, harassment and intimidation in said Division; opposition to discriminatory activities made unlawful by 2 U.S.C. 1311(a)(1) of the CAA.

63.   General Supervisor Gatewood warned the Plaintiff that she was not wise to have written and posted the notices.

64.   General Supervisor Gatewood warned the Plaintiff that a disciplinary action, a "suspension," was going to be proposed against the Plaintiff for having written and posting the notices.

65.   General Supervisor Gatewood wanted statements produced from the people who knew about the incident that occurred on August 31, 2011,  between plaintiff and four other co-workers.

66.   On September 8, 2011, Plaintiff again spoke with General Supervisor Gatewood in his office, SRB 25, about the incident occurring on August 31, 2011, and her notices in response to the incident; opposition to discrimination made unlawful by 2 U.S.C. 1311(a)(1) of the CAA.

67.   On September 8, 2011, Plaintiff learned from General Supervisor Gatewood that the men who were involved with the incident on August 31, 2011, were not required to submit statements as requested previously by General Supervisor Gatewood on September 2, 2011.

68.   On September 8, 2011, Plaintiff was advised by General Supervisor Gatewood that

John Britton, Paul Baltranus, Ronald Honesty, Paul Satterfield and Jeffrey Bixby wrote statements that were submitted to the Human Resources Division

69.  On September 8, 2011, Plaintiff was advised by General Supervisor Gatewood that he was collecting statements to send to the Human Resources Division.

70.  On September 8, 2011, Plaintiff was advised by General Supervisor Gatewood that she was the only one to be suspended.

71.  Thereafter, Plaintiff learned from Cesar Korzeniewicz of the Equal Employment Opportunity/Diversity Programs Office that Ronald Honesty did not write a statement.

72.  On September 8, 2011, General Supervisor Gatewood advised the Plaintiff that the statements submitted would be reviewed only by General Foreman Gatewood and William Miller, Head, Electronic Engineering Branch and the Human Resources Division and  that General Supervisor Gatewood and William Miller on reviewing the statements with the Human Resources Division would make a proper determination to fairly resolve the issues.

73.  At said second meeting with General Supervisor Gatewood of September 8, 2011, Plaintiff advised General Supervisor Gatewood that she had informed the EEO/DP Office about the incident occurring on August 31 , 2011 and had asked them for advice; opposition to discrimination made unlawful by the CAA.

74.  On September 8, 2011, Plaintiff had not submitted any documents and had not signed any documents with the EEO/DP..

75.  On September 8, 2011, General Foreman Gatewood advised the Plaintiff that there was no official notice regarding how to enter the work are or passing through the work area; it  was only a courtesy to those working in the area.

76.  On September 8, 2011, Supervisor Gatewood advised Plaintiff that he was going to attend a meeting on September 9, 2011, with William Miller, Head of the Electronic Engineering Branch, and a representative from the Human Resources Division to discuss the disciplining of the Plaintiff based on her placing of the notices on the wall and door in SRB 27  in the Senate Russell

Office Building.

77. On or about September 9/10, 2011, Plaintiff met a second time with Cesar Korzeniewicz of the EEO/DP and discussed Plaintiff's issues in the Electronic Engineering Division; opposition to discrimination made unlawful by 2 U.S.C. of the CAA..

78. On September 15, 2011, Plaintiff met a third time with Cesar Korzeniewicz of the EEO/DP at which time Plaintiff executed paperwork giving the EEO/DP authority to conduct an informal investigation of Plaintiff's issues; .opposition to activity made unlawful by the CAA.

79. Plaintiff returned from her temporary light duty on the Senate side to her permanent assignment on the House side on or about September 23, 2011

80. On October 27, 2011, Plaintiff met a fourth time with Cesar Korzeniewicz of the EEO/DP at which time she was advised that pursuant to the investigation by the EEO/DP of the Electronics Engineering Division the problems in said Division were more severe than the issues associated with the Plaintiff's case and the EEO/DP was closing Plaintiff's. case.

81. Cesar Korzeniewicz advised the Plaintiff that the Electronics Engineering Division was to attend mandatory training course regarding the equal employment, sexual harassment and diversity.

82. Cesar Korzeniewicz advised the Plaintiff that she could seek redress of her issues in the Office of Compliance.

83. Cesar Korzeniewicz further advised the Plaintiff that pursuant to his meeting with Paul Baltranus, Baltranus stated that he apologized for the Plaintiff's wasting the time of the EEO/DP on such a ridiculous issue; that he, Paul Baltranus was deaf and did not know that he was yelling in the face of the Plaintiff on August 31, 2011.

84. At the end of his  meeting with the Plaintiff on October 27, 2011, Korzeniewicz introduced the Plaintiff to John McPhual, Director of the EEO/CP with whom she  met; opposition to discrimination made unlawful by 2 U.S.C. 1311(a)(1) of the he CAA.

85. On meeting Director McPhaul, Plaintiff was advised that the EEO/DP investigation was

confidential.

86.   Director McPhaul further advised the Plaintiff that if she wanted to file a formal complaint she would have to go to the Office of Compliance.

87.   Director McPaul further advised the Plaintiff that if she experienced any other incidents of what appeared to be threatening in nature she should inform the United States Capitol Police.

88.   On or about early October 2011, Plaintiff, met with Dottie Blum, Employee Assistance Programs Adviser, "EAP," respecting the issues of discrimination and harassment with which Plaintiff was involved .

89.   Plaintiff met with EAP Advisor Blum pursuant to the recommendation of Cesar Korzeniewicz of the EEO/DP.

90.   Plaintiff advised Ms. Blum of her concerns respecting the Electronics Engineering Division and respecting her incident of August 31, 2011; opposition to matters made unlawful by the CAA.

91.   Plaintiff and Ms. Blum discussed Plaintiff's employment with Defendant and her earlier contact with Paul Baltranus at the Library of Congress when Paul Baltranus had assaulted the Plaintiff by pushing ear protection in the ear of the Plaintiff and pushing a "module" containing books into the chest of the Plaintiff;  opposition to matters made unlawful by the CAA.

92.   Plaintiff advised Ms. Blum that General Supervisor Gatewood considered the matter outside the "statute of limitations."

93.   Plaintiff and EAP Advisor Blum discussed Plaintiff'S most recent incident with  Paul Baltranus yelling in the face of the Plaintiff and ordering the Plaintiff out of the Senate office work area used by the Electronics Engineering Division.

94.   Ms. Blum assured the Plaintiff that the Electronics Engineering Division team wanted to resolve Plaintiff's issues with Paul Baltranus.

95.   Plaintiff provided EAP Advisor Blum with permission to speak with Bruce Arthur, Assistant Director of  Design Services and Plaintiff's fourth line supervisor.

96. Plaintiff advised EAP Advisor Blum that Ms. Blum could meet with anyone in management for the purpose of expediting a resolution of Plaintiff's issues.

97. On November 2, 2011, Plaintiff and Bruce Arthur, Assistant Director of Design Services met and discussed Plaintiff's issues with Paul Baltranus and the EED; opposition to discrimination made unlawful by 2 U.S.C. 1311(a)(1) of the CAA

98. Assistant Director Arthur advised the Plaintiff that he had been given recommendations on what EEO/DP believes could help resolve the issue between Paul Baltranus and the Plaintiff; *ie.* mandatory training provided by the EEO/DP.

99. Assistant Director Arthur advised the Plaintiff that pursuant to "his" investigation he believed that the incident with Paul Baltranus and the Plaintiff resulted from "a personality clash."

100. Assistant Director Arthur advised the Plaintiff that he is suggesting that EEO work with the entire EED Division to review the AOC policies.

101. Assistant Director Arthur advised the Plaintiff there was to be no reprimand or suspension issued to either the Plaintiff or Paul Baltranus absent identifying the activity for which discipline was warranted.

102. Assistant Director Arthur advised the Plaintiff that he recommends that Paul Baltranus and the Plaintiff not meet for "personal reasons" but did not elaborate on the meaning of "personal reasons."

103. Assistant Director Arthur advised the Plaintiff that the EEO/DP Office is in the process of setting up a program for the Electronic Engineering Division to attend and have an open discussion for the purpose of educating everyone on the importance of respect and procedures in the workplace.

104. The Plaintiff advised Assistant Director Arthur that she was willing to try what EEO was suggesting and emphasized that she was afraid of the behavior of Paul Baltranus towards her.

105. Assistant Director Arthur advised the Plaintiff that after completion of the training with the EEO/DP, everyone will be responsible for their actions and discipline will be imposed and

enforced against anyone who violates the rules.

106. On or about November 7, 2011, Plaintiff met with Christine Merdon, Chief Operating Officer, "COO," of Defendant; opposition to discrimination made unlawful by 2 U.S.C. 1311(a)(1) of the CAA.

107. At said meeting Plaintiff informed COO Merdon in detail about the incident with Paul Baltranus occurring on August 31, 2011; opposition to activity made unlawful by the CAA.

108. Plaintiff advised COO Merdon of her concerns and fears respecting workplace violence and discrimination she had experienced based on her African American race and her female sex and gender.

109. Plaintiff advised COO Merdon about her earlier incident with Paul Baltranus.

110. Plaintiff asked COO Merdon to speak with Assistant Director Arthur to help expedite the process to help relieve Plaintiff's stress resulting from the incident with Paul Baltranus.

111. Plaintiff further advised COO Merdon that Plaintiff had already unofficially provided Lt. Brown, USCP, Senate Division, details regarding the incident with Paul Baltranus.

112. COO Merdon advised the Plaintiff to formally report the matter to the Capitol Police if Plaintiff deemed it necessary and assured the Plaintiff that management of Defendant would enforce the policy and procedures and not to worry.

113. On or about the following week of November 14, 2011, Plaintiff met with William Miller in his 5th floor office in the Ford House Office Building

114. Plaintiff advised Mr. Miller, Plaintiff's third line supervisor, in complete detail of her earlier meetings with Assistant Director Arthur and COO Merdon; opposition to discrimination made unlawful by 2 U.S.C. 1311(a)(1) of the CAA.

115. Mr. Miller advised the Plaintiff that he agreed with his superiors, Assistant Director Arthur and COO Merdon, that the planned process with the EEO/CP would be a great and effective start to provide closure of the incident with Paul Baltranus.

116. Plaintiff expressed to Miller that she was finally feeling that the efforts of the EEO

Group and the EED Division working diligently together on the issue will bring relief, fairness and understanding to all.

117.  Plaintiff at this time decided not to pursue her claims with the Office of Compliance and to give the agency opportunity to resolve the incident.

118. Plaintiff had contacted the Office of Compliance and was advised that she had 180 days if AOC management was ineffective.

119.  Plaintiff had no reason to believe that further actions were necessary beyond Defendant at this time.

120.  On January 27, 2012, Plaintiff met with Supervisor Bean and General Supervisor Gatewood to discuss her Performance Evaluation for the appraisal period of January 14, 2011 through December 31, 2011.

121.  General Supervisor Gatewood explained that, except for the category of work relationships, both he and Supervisor Bean, determined the ratings given the Plaintiff.

122.  General Supervisor Gatewood stated that he alone rated the category, "work relationships," into which the August 31, 2011 incident between the Plaintiff and Paul Baltranus; was categorized.

123.  General Supervisor Gatewood only rated the Plaintiff as "fully successful" for said category of "work relationships."

124. Plaintiff had been rated as "outstanding" for said category for the prior appraisal period.

125.  General Supervisor Gatewood further stated that, pursuant to the August 31, 2011 incident with Paul Baltranus, he would not change his decision to deprive Plaintiff a bonus award due the Plaintiff pursuant to her overall rating of "outstanding;" a loss of $1,200.00.

126. General Supervisor Gatewood informed the Plaintiff that she could seek redress of his decision to deprive her of the bonus resulting from her overall performance rating of "outstanding" with Bill Miller, Head of the Electronics Engineering Division and/or Bruce Arthur, Assistant Director of Design Services.

127.   Plaintiff advised General Supervisor Gatewood that Assistant Director Arthur had stated that there were no disciplinary actions resulting from the August 31, 2011, incident and that to deprive her of said $1,200.00 was a discipline and penalty resulting from said incident.

128.   Plaintiff made an appointment for February 9, 2012 in the Office of Compliance after her meeting with  Supervisor Bean and General Foreman Gatewood on January 27, 2012.

129.   On February 17, 2012, General Supervisor Gatewood, asked Supervisor Bean to meet with him and the Plaintiff to discuss a change in Plaintiff's performance evaluation.

130.   On February 17, 2012, when Supervisor Bean, the Plaintiff and General Supervisor Gatewood met, General Supervisor rudely provided the Plaintiff with a "revised" copy of Plaintiff's performance evaluation by shoving the "revised" copy of  the Performance Evaluation across the table to the Plaintiff.

131.   In response to the Plaintiff's inquiry respecting the "revised" Performance Evaluation, General Supervisor Gatewood stated that he was informed by the Human Resources Division that Plaintiff's Performance Evaluation as originally prepared by General Foreman Gatewood and Supervisor Bean was not done correctly; that Plaintiff wasn't treated fairly; and that Plaintiff should receive her bonus for receiving a rating of "outstanding" on her Performance Evaluation..

132.   General Supervisor Gatewood further stated that he was not wrong in preparing the Performance Evaluation; that his rating stands; and  that the Plaintiff was not entitled to receive the bonus based on "instigating the fight" with Paul Baltranus.

133.   Plaintiff, in response, stated that "that's the reason I'm continuing the investigation of this issue.  I don't agree with what's happening to me and I want resolution and closure to this problem."

134.   General Supervisor Gatewood in response stated that "That's part of the problem, your demeanor and attitude."

135.   Plaintiff in response stated that the problem was his attitude and demeanor.

136. General Supervisor Gatewood closed the meeting and advised the Plaintiff that Plaintiff

would be notified of a decision in a few weeks when the award will be given; and, that the award needed to be approved by Anna Franz, Director of Planning and Project Management.

137.  On March 13, 2012, Plaintiff met with William Miller, Head of the Electronics Engineering Branch; opposition to discrimination made unlawful by 2 U.S.C. 1317(a)(1) of the CAA..

138.  The topics discussed at the meeting were:

a. the August-September 2011 incident with Paul Baltranus, John Britton, Paul Satterfield, Ronald Honesty and the Plaintiff

b. the notice posted by the Plaintiff on the wall of SRB 27 and on the door of SRB 27;

c. the first Performance Evaluation

d. the second Performance Evaluation

e. Plaintiff's comments respecting General Supervisor Gatewood to William Miller

f. Plaintiff's fear of Paul Baltranus

139.  On March 14, 2012, Plaintiff, William Miller, and General Supervisor Gatewood and Supervisor Bean met at which time the same topics were raised in the meeting with William Miller and the Plaintiff; opposition to discrimination made unlawful by 2 U.S.C. 1317(a)(1) of the CAA.

140.  General Supervisor Gatewood advised the Plaintiff that the bonus pay was taken because the Plaintiff posted the notices respectively on the door and wall pursuant to the confrontation on August 31, 2011, a confrontation that General Supervisor Gatewood said was instigated by the Plaintiff.

141.  General Supervisor Gatewood admitted that he made a mistake about depriving Plaintiff of her bonus.

142.  General Supervisor Gatewood admitted that  William Miller, first line supervisor to General Supervisor Gatewood, had told General Supervisor Gatewood to award the bonus pay to the Plaintiff.

143.  General Supervisor Gatewood admitted that his disrespectful and condescending

manner in speaking with the Plaintiff was the result of his military training.

144  In response to Plaintiff's query as to why Paul Baltranus was not present at the meeting on March 14, 2012, William Miller, stated that "he could not make him come to the meeting."

145.  Plaintiff advised William Miller, General Supervisor Gatewood and Supervisor Bean that she was uncomfortable in the workplace, that she was intentionally provoked on August 31, 2011, that she wrote and placed her notices on the door and wall in opposition to the treatment she was receiving and to shine light on the treatment she was receiving, and that the Division was trying to find ways to get her angry and jeopardize her job.

### COUNT I:  UNLAWFUL DISCRIMINATION BASED ON PLAINTIFF'S AFRICAN AMERICAN RACE IN VIOLATION OF 2 U.S.C. 1311(a)(1) OF THE CAA: DEFENDANT'S THREAT TO DISCIPLINE THE PLAINTIFF

146.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 145 of this Complaint as though fully set forth therein.

147. Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 was an unlawful discriminatory employment activity based on Plaintiff's African American race  taken by Defendant in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the prohibitions against unlawful discriminatory employment activity set forth therein.

148.  There was a causal connection between Plaintiff's African American race and Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 and Defendant's unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the terms, conditions and privileges of Plaintiff's employment set forth therein.

149. The effect of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

150. As a direct and proximate cause of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT II:   UNLAWFUL DISCRIMINATION BASED ON PLAINTIFF'S FEMALE SEX AND GENDER IN VIOLATION OF 2 U.S.C. 1311(a)(1) OF THE CAA: DEFENDANT'S THREAT TO DISCIPLINE THE PLAINTIFF

151.   Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 150 of this Complaint as though fully set forth therein.

152. Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 was an unlawful discriminatory employment activity based on Plaintiff's female sex and gender taken by Defendant in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the prohibitions against unlawful discriminatory employment activity set forth therein.

153.   There was a causal connection between Plaintiff's female sex and gender and Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 and Defendant's unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the terms, conditions and privileges of Plaintiff's employment set forth therein.

154. The effect of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

155. As a direct and proximate cause of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT III:  RETALIATION BASED ON PLAINTIFF'S OPPOSITION TO RACE DISCRIMINATION MADE UNLAWFUL BY 2 U.S.C. 1311(a)(1)OF THE CAA: DEFENDANT'S THREAT TO DISCIPLINE THE PLAINTIFF

156.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 155 of this Complaint as though fully set forth therein.

157.  The activities described in Paragraph 1 through Paragraph 156 herein this Complaint respecting Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 were unlawful retaliatory employment activities based on Plaintiff's opposition to discrimination based on her African American race made unlawful by 2 U.S.C. 1311(a)(1) of the CAA and were taken by Defendant in violation of 2 U.S.C. 1317(a) of the CAA.

158.  Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 was an unlawful retaliatory employment activity reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA and deter and chill participation in federally protected activities under the CAA.

159.  There was a causal connection between Plaintiff's opposition to discrimination based on her African American race and Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on September 1, 2011 on the wall and door of Room SRB 27; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

160.  The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

161.  As a direct and proximate cause of the unlawful retaliatory employment activity taken

by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT IV:  RETALIATION BASED ON PLAINTIFF'S OPPOSITION TO SEX AND GENDER DISCRIMINATION  MADE UNLAWFUL BY 2 U.S.C. 1311(a)(1) OF THE CAA: DEFENDANT'S THREAT TO DISCIPLINE THE PLAINTIFF

162  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 161 of this Complaint as though fully set forth therein.

163.  The activities described in Paragraph 1 through Paragraph 162  herein this Complaint respecting Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 were unlawful retaliatory employment activities based on Plaintiff's opposition to discrimination based on her female sex and gender and were taken by Defendant in violation of 2 U.S.C. 1317(a) of the CAA.

164.  Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 was an unlawful retaliatory employment activity reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA and deter and chill participation in federally protected activities under the CAA.

165.  There was a causal connection between Plaintiff's opposition to discrimination based on her female sex and gender and Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on September 1, 2011 on the wall and door of Room SRB 27; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

166.  The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional

instrumentality.

167. As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT V:  RETALIATION BASED ON PLAINTIFF'S PARTICIPATION IN FEDERALLY PROTECTED ACTIVITIES IN UNLAWFUL VIOLATION OF 2 U.S.C. 1317(a) OF THE CAA: DEFENDANT'S THREAT TO DISCIPLINE THE PLAINTIFF

168. Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 167 of this Complaint as though fully set forth therein.

169. The activities described in Paragraph 1 through Paragraph 168 herein this Complaint respecting Defendant's threat to discipline the Plaintiff based on Plaintiff's posting a warning on August 31, 2011 on the wall and door of Room SRB 27 were unlawful retaliatory employment activities based on Plaintiff's participation in federally protected activities pursuant to her prosecution of her Request for Counseling in Case No. 12-AC–22(CV, RP) in the Office of Compliance and were taken by Defendant in violation of 2 U.S.C. 1317(a) of the CAA.

170. to discipline the Plaintiff based on Plaintiff's posting a warning on September 1, 2011 on the wall and door of Room SRB 27 was an unlawful retaliatory employment activity reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA and deter and chill participation in federally protected activities under the CAA.

171. There was a causal connection between Plaintiff's participation in federally protected activities pursuant to her prosecution of her underlying Request for Counseling in Case No. 12-AC-22(CV, RP) in the Office of Compliance and Defendant's threat to discipline the Plaintiff based on posting a warning on August 31, 2011 on the wall and door of Room SRB 27; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

172.  The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

173.  As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

**COUNT VI:  UNLAWFUL DISCRIMINATION BASED ON
PLAINTIFF'S AFRICAN AMERICAN RACE
IN VIOLATION OF 2 U.S.C. 1311(a)(1) OF THE CAA:
DEFENDANT'S INITIAL DENIAL OF PLAINTIFF'S BONUS PAY**

174.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 173 of this Complaint as though fully set forth therein.

175.  Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation was an unlawful discriminatory employment activity based on Plaintiff's African American race taken by Defendant in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the prohibitions against unlawful discriminatory employment activity set forth therein.

176.  There was a causal connection between Plaintiff's African American race and Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation and Defendant's unlawful violation of 2 U.S.C. 1311(a)(1) o the CAA and the terms, conditions and privileges of Plaintiff's employment set forth therein.

177.  The effect of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

178.  As a direct and proximate cause of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages,

including but not limited to attorney's fees, emotional distress and other damages.

## COUNT VII: UNLAWFUL DISCRIMINATION BASED ON PLAINTIFF'S FEMALE SEX AND GENDER IN VIOLATION OF 2 U.S.C. 1311(a)(1) OF THE CAA: DEFENDANT'S INITIAL DENIAL OF PLAINTIFF'S BONUS PAY

179. Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 178 this Complaint as though fully set forth therein.

180. Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation was an unlawful discriminatory employment activity based on Plaintiff's female sex and gender taken by Defendant in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the prohibitions against unlawful discriminatory employment activity set forth therein.

181. There was a causal connection between Plaintiff's female sex and gender and Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation and Defendant's unlawful violation of 2 U.S.C. 1311(a)(1) o the CAA and the terms, conditions and privileges of Plaintiff's employment set forth therein.

182. The effect of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

183. As a direct and proximate cause of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT VIII: UNLAWFUL RETALIATION BASED ON PLAINTIFF'S OPPOSITION TO RACE DISCRIMINATION MADE UNLAWFUL BY 2 U.S.C. 1311(a)(1)OF THE CAA: DEFENDANT'S INITIAL DENIAL OF PLAINTIFF'S BONUS PAY

184. Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 183 of this Complaint as though fully set forth therein.

185. The activities described in Paragraph 1 through Paragraph 184 herein this Complaint respecting Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation were unlawful retaliatory employment activities based on Plaintiff's opposition to discrimination based on Plaintiff's African American race made unlawful by 2 U.S.C. 1311(a)(1) of the CAA and were taken by Defendant in violation of 2 U.S.C. 1317(a) of the CAA.

186. Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation was an unlawful retaliatory employment activity reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA and deter and chill participation in federally protected activities under the CAA.

187. There was a causal connection between Plaintiff's opposition to discrimination based on Plaintiff's African American race and Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

188. The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

189. As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

**COUNT IX:  UNLAWFUL RETALIATION BASED ON PLAINTIFF'S OPPOSITION
TO SEX AND GENDER DISCRIMINATION  MADE UNLAWFUL
BY 2 U.S.C. 1311(a)(1) OF THE CAA IN VIOLATION OF 2 U.S.C.1317(a)
BASED ON PLAINTIFF'S OPPOSITION TO MATTERS MADE UNLAWFUL BY
2 U.S.C. 1311(a)(1) OF THE CAA:
DEFENDANT'S INITIAL DENIAL OF PLAINTIFF'S BONUS PAY**

190.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 1897 of this Complaint as though fully set forth therein.

191.  The activities described in Paragraph 1 through Paragraph 190 herein this Complaint respecting Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation were unlawful retaliatory employment activities based on Plaintiff's opposition to discrimination based on Plaintiff's female sex and gender made unlawful by 2 U.S.C. 1311(a)(1) of the CAA and were taken by Defendant in violation of 2 U.S.C. 1317(a) of the CAA.

192.  Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation was an unlawful retaliatory employment activity reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA and deter and chill participation in federally protected activities under the CAA.

193.  There was a causal connection between Plaintiff's opposition to discrimination based on Plaintiff's female sex and gender and Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation.

194.  The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

195.  As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

**COUNT X:  UNLAWFUL RETALIATION IN VIOLATION OF 2 U.S.C.1317(a)
BASED ON PLAINTIFF'S PARTICIPATION IN
FEDERALLY PROTECTED ACTIVITIES UNDER THE CAA:
DEFENDANT'S INITIAL DENIAL OF PLAINTIFF'S BONUS PAY**

196.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 195 of this Complaint as though fully set forth therein.

197.  The activities described in Paragraph 1 through Paragraph 196 herein this Complaint respecting Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation were unlawful retaliatory employment activities based on Plaintiff's participation in federally protected activities pursuant to her on going prosecution of her underlying Request for Counseling in Case No. 12-AC–22(CV, RP) in the Office of Compliance and were taken by Defendant in violation of 2 U.S.C. 1317(a) of the CAA.

198.  Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation was an unlawful retaliatory employment activity reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA and deter and chill participation in federally protected activities under the CAA.

199.  There was a causal connection between Plaintiff's participation in federally protected activities pursuant to her prosecution of her underlying Request for Counseling in Case No. 12-AC–22(CV, RP) in the Office of Compliance and Defendant's initial denial to approve Plaintiff's bonus pay pursuant to her outstanding rating on her Performance Evaluation.

200.  The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

201.  As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT XI: UNLAWFUL DISCRIMINATION BASED ON PLAINTIFF'S AFRICAN AMERICAN RACE IN VIOLATION OF 2 U.S.C. 1311(a)(1) OF THE CAA: CREATION OF A HOSTILE WORK ENVIRONMENT

202. Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 201 of this Complaint as though fully set forth therein.

203. The pattern of on going and continuing unlawful employment activities taken by Defendant's decisionmaking agents resulting in the allegations set forth in Paragraph 1 through Paragraph 202 of this Complaint were unlawful employment activities based on Plaintiff's African American race taken by Defendant and created a hostile work environment in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the prohibitions against unlawful discriminatory employment activity set forth therein.

204. There was a causal connection between Plaintiff's African American race and the pattern of decisions taken by Defendant's decisionmaking agents resulting in the creation of a discriminatory hostile work environment in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and Defendant's unlawful violation of the terms, conditions and privileges of Plaintiff's employment set forth therein; an adverse personnel action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

205. The effect of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

206. As a direct and proximate cause of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT XII.  UNLAWFUL DISCRIMINATION BASED ON PLAINTIFF'S FEMALE SEX AND GENDER IN VIOLATION OF 2 U.S.C. 1311(a)(1) OF THE CAA: CREATION OF A HOSTILE WORK ENVIRONMENT PURSUANT

207.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 206 of this Complaint as though fully set forth therein.

208.  The pattern of on going and continuing unlawful employment activities taken by Defendant's decisionmaking agents resulting in the allegations set forth in Paragraph 1 through Paragraph 207 of this Complaint were unlawful employment activities based on Plaintiff's female sex and gender taken by Defendant and created a hostile work environment in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and the prohibitions against unlawful discriminatory employment activity set forth therein.

209.  There was a causal connection between Plaintiff's female sex and gender and the pattern of decisions taken by Defendant's decisionmaking agents resulting in the creation of a discriminatory hostile work environment in unlawful violation of 2 U.S.C. 1311(a)(1) of the CAA and Defendant's unlawful violation of the terms, conditions and privileges of Plaintiff's employment set forth therein; an adverse personnel action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

210.  The effect of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

211.  As a direct and proximate cause of the unlawful discriminatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT XIII:  RETALIATION BASED ON PLAINTIFF'S OPPOSITION
## TO RACE DISCRIMINATION MADE UNLAWFUL
## BY 2 U.S.C. 1311(a)(1)OF THE CAA:
## CREATION OF A HOSTILE WORK ENVIRONMENT

212.  Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 210 of this Complaint as though fully set forth therein.

213.  The pattern of on going and continuing unlawful employment activities taken by Defendant's decisionmaking agents resulting in the allegations set forth in Paragraph 1 through Paragraph 212 of this Complaint were unlawful retaliatory employment activities creating a hostile work environment by Defendant in violation of 2 U.S.C. 1317(a) of the CAA and were based on Plaintiff's opposition to discrimination in violation of 2 U.S.C. 1311(a)(1) based on his African American race.

214.  There was a causal connection between Plaintiff's participation in federally protected activities pursuant to her opposition to discrimination based on her African American race in violation of 2 U.S.C. 1311(a)(1) and Defendant's creation of a hostile work environment; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

215.  The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

216.  As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

**COUNT XIV:  RETALIATION BASED ON PLAINTIFF'S OPPOSITION
TO SEX AND GENDER DISCRIMINATION MADE UNLAWFUL
BY 2 U.S.C. 1311(a)(1)OF THE CAA:
CREATION OF A HOSTILE WORK ENVIRONMENT**

217.   Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 216 of this Complaint as though fully set forth therein.

218.   The pattern of on going and continuing unlawful employment activities taken by Defendant's decisionmaking agents resulting in the allegations set forth in Paragraph 1 through Paragraph 217 of this Complaint were unlawful retaliatory employment activities creating a hostile work environment by Defendant in violation of 2 U.S.C. 1317(a) of the CAA and were based on Plaintiff's opposition to discrimination in violation of 2 U.S.C. 1311(a)(1) based on her female sex and gender. .

219.   There was a causal connection between Plaintiff's participation in federally protected activities pursuant to her opposition to discrimination based on her female sex and gender in violation of 2 U.S.C. 1311(a)(1) and Defendant's creation of a hostile work environment; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

220.   The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

221.   As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

## COUNT XV:   RETALIATION BASED ON PLAINTIFF'S PARTICIPATION IN FEDERALLY PROTECTED ACTIVITIES IN UNLAWFUL VIOLATION OF 2 U.S.C. 1317(a) OF THE CAA: CREATION OF A HOSTILE WORK ENVIRONMENT

222. Plaintiff incorporates each and every allegation set forth in Paragraph 1 through Paragraph 221 of this Complaint as though fully set forth therein.

223. The pattern of on going and continuing unlawful employment activities taken by Defendant's decisionmaking agents resulting in the allegations set forth in Paragraph 1 through Paragraph 222 of this Complaint were unlawful retaliatory employment activities creating a hostile work environment by Defendant in violation of 2 U.S.C. 1317(a) of the CAA and were based on Plaintiff's participation in federally protected activities pursuant to her prosecution of her Request for Counseling in Case No. 12-AC-22(CV, RP) in the Office of Compliance.

224. There was a causal connection between Plaintiff's participation in federally protected activities pursuant to her participation in federally protected activities pursuant to her prosecution of her Request for Counseling in Case No. 12-AC-22(CV, RP) in the Office of Compliance and Defendant's creation of a hostile work environment; an adverse action designed to interfere, dissuade, chill and deter unfettered access to statutory remedial mechanisms by the Plaintiff and others from engaging in protected activities and reasonably likely to deter and chill opposition to discriminatory and retaliatory employment activities made unlawful by the CAA.

225. The effect of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove in this Complaint was to adversely affect and alter the terms and conditions and privileges of Plaintiff's employment and her employment status within the Congressional instrumentality.

226. As a direct and proximate cause of the unlawful retaliatory employment activity taken by Defendant as set forth hereinabove Plaintiff has suffered and continues to suffer damages, including but not limited to attorney's fees, emotional distress and other damages.

WHEREFORE, Plaintiff prays the Court to:

1. Declare the unlawful discriminatory employment activities complained of herein Count

I, Count II and Count VI, Count VII,  Count XI, and Count XII,  were in violation of 2 U.S.C. 1311(a)(1) of the CAA.

2. Declare the unlawful retaliatory employment activities complained of herein Count III through Count V, Count VIII through Count X, and Count XIII through Count XV were in violation of 2 U.S.C. 1317(a) of the CAA.

3. Direct Defendant to place Plaintiff in the position she would be in but for Defendant's unlawful discriminatory and unlawful retaliatory treatment of her and to make her whole for all earnings and benefits she would have received but for Defendant's unlawful and prohibited discriminatory and retaliatory treatment of the Plaintiff.

4. Direct Defendant, with respect to Count I, Count II, Count VI, Count VII, Count XI, and Count XII to pay Plaintiff $300,000.00 in compensatory damages and damages consistent with 2 U.S.C. 1311(b) of the CAA.

5. Direct Defendant, with respect to Count III through Count V,  Count VIII through Count X, and Count XIII  through Count XV to pay Plaintiff $300,000.00 in compensatory damages and damages consistent with 2 U.S.C. 1311(b) of the CAA.

6. Award Plaintiff attorney's fees, costs and such other relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff requests a jury demand.

Respectfully submitted,

Jeffrey H. Leib, Bar #89649
Attorney for Plaintiff
5104 34th Street, N.W.
Washington, D.C. 20008
(202) 362 - 0682
(202) 244 - 1120

October 29, 2012